(Not for Publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
NESEA CONSTRUCTION, INC., et al.,   :
                                    :
            Plaintiffs,             :     Civil No. 03-2111 (RBK)
                                    :
        v.                          :     **OPINION**
                                    :
THE BILCO COMPANY,                  :
                                    :
            Defendant.              :
_____ :

**KUGLER**, United States District Judge:

Presently before the Court is a motion by defendant The Bilco Company ("Bilco") for reconsideration of this Court's Opinion and Order of June 25, 2007 in which the Court denied Bilco's motion for summary judgment against plaintiffs NESEA Construction, Inc., David/Randal Associates, Inc., and Safety Rail Source, LLC,[1] with respect to Bilco's alleged infringement of U.S. Patent. No. 6,167,659 ("the '659 Patent").  For the reasons set forth below, the Court will deny Bilco's motion for reconsideration because although the Court will now consider the prior art proffered by Bilco, Bilco has not met its burden of proving the invalidity of the '659 Patent.

_____
[1] As the latter two plaintiffs are licensees under the patent agreement, this Court will refer to plaintiffs collectively as "NESEA."

1

**I.    BACKGROUND**

This action involves NESEA's allegation of Bilco's infringement of the '659 Patent, as reissued on March 21, 2006. The '659 Patent is one for a "roof or access hatch safety railing system." In the motion presently before the Court, Bilco moves for reconsideration of the June 25, 2007 Opinion and Order denying its motion for summary judgment on the grounds that the '659 Patent is invalid. Specifically, Bilco draws this Court's attention to photographs of the scuttle hatch and safety railings of the U.S.S. Ostfriesland, a German battleship that was taken over and subsequently commissioned by the U.S. Navy in 1920, which are and have been publicly available in this country's National Archives from well before the date of the '659 Patent application. Bilco alleges that these photographs constitute "prior art" under 35 U.S.C. § 102, which it claims invalidates the '659 Patent for anticipation, or alternatively for obviousness pursuant to 35 U.S.C. § 103.

This Court denied Bilco's motion for summary judgment due to what the Court viewed as a lack of evidence that one skilled in the art of safety railings, exercising reasonable diligence, would have located these photographs. In so finding, the Court drew from a declaration by Harold L. Swindell, III, the named inventor on the '659 Patent. Swindell stated that he has "been involved in the roofing and safety business for more than eight years and [has] made several inventions relating to safety rails." (Swindell Decl. ¶ 2.) Swindell further states that "[w]hen developing or designing a roof safety product, I would never think to conduct research on battleships. I certainly would never think to go to a library or to the National Archives to look for photographs of battleships." (Id. at ¶ 4.) From this evidence, the Court decided that Bilco had not carried its burden by showing, based on clear and convincing evidence, that interested

members of the relevant public could obtain the prior art if they wanted to.

Nor was the Court satisfied that Bilco carried its burden in arguing that the hatch safety railings on the Ostfriesland had been "in public use . . . in this country, more than one year prior to the date of the application for [the '659 Patent]." See 35 U.S.C. § 102(b). The Court found that Bilco had submitted only prospective statements in news articles about the ship being available for public tours and that such evidence did not show by clear and convincing evidence that visitors were able to view and use the access hatch and safety railings. Because the Court found that the photographs did not qualify as "printed publications," it did not go on to examine Bilco's arguments on anticipation and obviousness. Following the Court's opinion and order, Bilco timely filed the motion for reconsideration now before the Court. In that motion, Bilco alternatively asks this Court to certify for interlocutory appeal the questions of whether the photographs of the Ostfriesland are printed publications and whether the Ostfriesland safety railings were in public use.

## II.     STANDARD

Local Civil Rule 7.1(I) permits a court to reconsider a prior decision upon a showing that the court overlooked dispositive factual matters. See Bryan v. Shah, 351 F. Supp. 2d 295, 297 (D.N.J. 2005); Bowers v. Nat'l Collegiate Athletic Ass'n, 130 F. Supp. 2d 610, 612 (D.N.J. 2001). Rule 7.1(I) does not contemplate a recapitulation of arguments considered by the court before rendering its decision. See Bermingham v. Sony Corp. of Am., Inc., 820 F. Supp. 834, 856 (D.N.J. 1992); Carteret Sav. Bank, F.A. v. Shushan, 721 F. Supp. 705, 709 (D.N.J. 1989). A court may grant a motion under Rule 7.1(I) only if: (1) "an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is

necessary to correct a clear error of law or prevent manifest injustice." <u>Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp.</u>, 825 F. Supp. 1216, 1220 (D.N.J. 1993); <u>N. River Ins. Co. v. CIGNA Reinsurance Co.</u>, 52 F.3d 1194, 1218 (3d Cir. 1995).

Reconsideration is "an extraordinary remedy," and a court should grant it "very sparingly." <u>NL Indus. Inc. v. Commercial Union Ins. Co.</u>, 935 F. Supp. 513, 516 (D.N.J. 1996); <u>Maldonado v. Lucca</u>, 636 F. Supp. 621, 630 (D.N.J. 1986). "[M]ere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for reargument." <u>Yurecko v. Port Auth. Trans. Hudson Corp.</u>, 279 F. Supp. 2d 606, 609 (D.N.J. 2003).

### III.  ANALYSIS

In its motion for reconsideration Bilco argues first that the Court misapplied the Federal Circuit's test for a "printed publication." While Bilco agrees with the test as stated in this Court's prior opinion, Bilco argues that the Court placed undue emphasis on the subjective evidence submitted by NESEA that Swindell, inventor of the '659 Patent and proffered representative of those skilled in the art of access hatch safety, would never think to look in a library "[w]hen developing or designing a roof safety product." Upon further consideration, the Court agrees that it did not correctly apply the Federal Circuit's test.

#### A.  Prior Art

35 U.S.C. § 102(b) provides that a patent can be rendered invalid if "the invention was . . . described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." "The 'printed publication' provision of § 102(b) 'was designed to prevent withdrawal by an

inventor . . . of that which was already in the possession of the public.'" Bruckelmyer v. Ground Heaters, Inc., 445 F.3d 1374, 1378 (Fed. Cir. 2006) (quoting In re Wyer, 655 F.2d 221, 226 (CCPA 1981)).  A given reference is a "printed publication" if it was "publicly accessible" during the prior period.  Id.  A party can establish that a given reference is "publicly accessible," by demonstrating that such document "has been . . . made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it and recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation."  Id. (internal quotation marks and citation omitted).

      The Federal Circuit has determined that a movant demonstrates that a reference is publicly accessible by adducing evidence that the reference was "properly classified, indexed, or abstracted."  Id. (citing  In re Wyer, 655 F.2d at 226).  "If accessibility is proved, there is no requirement to show that particular members of the public actually received the information." Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1569 (Fed. Cir. 1987).

      Based on the evidence Bilco presents in its motion for summary judgment, the Court finds that the photographs of the Ostfriesland constitute a prior art reference under 35 U.S.C. § 102(b).  The photographs have been available to the public both at the National Archives and online for far longer than the one year required by § 102(b).  (Def.'s Mot. Summ. J. Ex. H; Decl. of Holly Reed ¶¶ 6, 7, 12.)  Furthermore, Bilco's evidence demonstrates that the photographs are properly classified as photographs coming from the records of the Bureau of Ships "relating to U.S. Naval vessels," including "outside and inside views, equipment, [and] plans."  (See Def.'s Mot. Summ. J. Ex. G.)  The declaration of Holly Reed, archives specialist at the Special Media Archives Services Division of the National Archives and Records Administration, indicates that

the images were processed, which involves briefly describing them so that they are searchable using the National Archives finding aid in their "Public Researcher." (Decl. of Holly Reed ¶¶ 1, 9-10.) Significantly, NESEA has presented no evidence that these photographs are not properly indexed and classified.

Instead, NESEA focuses its argument on whether persons ordinarily skilled in the subject matter would think to look for photographs of ships in the National Archives when designing a roof hatch safety mechanism and offers the declaration of the inventor of the '659 Patent as representative of that group. As a legal matter, however, a person of ordinary skill in the subject matter is charged with having knowledge of all pertinent prior art. Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc., 807 F.2d 955, 962 (Fed. Cir. 1986). Therefore, the fact that the inventor would not think to research a particular source is not relevant. Id.

Additionally, prior art is not such a limited concept that one ordinarily skilled in the art is only presumed to be aware of all prior references to a narrow subject matter, such as roof access hatch safety railings, but rather of all arts "reasonably pertinent to the particular problem with which the inventor was involved." Princeton Biochemicals, Inc. v. Beckman Coulter, Inc., 411 F.3d 1332, 1338 (Fed. Cir. 2005). "A reference is reasonably pertinent if, even though it may be in a different field of endeavor, it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem." Id. (quotations and citations omitted). As Bilco points out, during the examination of the '659 Patent, the U.S. Patent and Trademark Office deemed manhole safety railings analogous prior art. Accordingly, the Court will not apply the overly constrained meaning of prior art proposed by NESEA.

Given the Court's changed disposition, now concluding that the photographs are a prior art reference, the Court must next address the argument in Bilco's summary judgment motion that the prior art reference anticipates and therefore invalidates the '659 Patent, or alternatively, that it is invalid for obviousness.

### B. Anticipation

Bilco argues in its motion for summary judgment that a comparison of the fourteen claims contained in the '659 Patent to the Ostfriesland's scuttle hatch safety railing shows that each claim limitation is found in the prior art. (Def.'s Mot. Summ. J. at 13.)  NESEA disputes this contention, pointing out several examples of claim limitations allegedly not present in the prior art, and the Court agrees that Bilco has not surmounted its burden of proving by clear and convincing evidence that each and every claim limitation is anticipated in the prior art.

Patent validity is a question of law.  See Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17 (1966).  "A patent is presumed valid." Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1562 (Fed. Cir. 1988).  Moreover, "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; [and] dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim."  See id.; Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1370 (Fed. Cir. 2003).  Due to the presumption of validity, a party challenging a patent's validity "must establish facts, by clear and convincing evidence, which persuasively lead to the conclusion of invalidity."  See Avia, 853 F.2d at 1562.

Whether a piece of prior art is anticipating is a question of fact.  Apple Computer, Inc. v. Articulate Sys., 234 F.3d 14, 20 (Fed. Cir. 2000) (citing Scripps Clinic & Research Found. v.

7

Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir.1991)).  An "anticipating" reference must describe all of the elements and limitations of the claim in a single reference, and enable one of ordinary skill in the field of the invention to make and use the claimed invention.  Merck & Co., Inc. v. Teva Pharm. USA, Inc., 347 F.3d 1367, 1372 (Fed. Cir. 2003).  Stated otherwise, to find that prior art anticipates, this Court must conclude that, as viewed by a person of ordinary skill in the field, there is no difference between the claimed invention and the prior art reference. Scripps Clinic & Research Found., 927 F.2d at 1576 (citations omitted).  Summary judgment is appropriate on a question of validity when the party challenging validity has shown by clear and convincing evidence facts supporting a conclusion of invalidity.  Ryco, Inc. v. Ag-Bag Corp., 857 F.2d 1418, 1423 (Fed. Cir. 1988).

## I. Claim 17

Bilco has not demonstrated that the scuttle hatch and safety railings on the Ostfriesland anticipates Claim 17 in its entirety.  Claim 17 states:

> The combination of a roof access hatch and a safety railing for increasing a person's safety as the person climbs onto the horizontal support surface of a building comprising: a roof access hatch having a front, a left side and right side and having a base member, said base member extending upwardly from said horizontal support surface and including a left corner and a right corner, and a safety railing including at least left and right poles extending upwardly from said base member of said roof access hatch, said left pole being connected to said left side of said base member adjacent said left corner and said right pole being connected to said right side of said base member adjacent said right corner, said poles being spaced from each other by a distance of at least twenty four inches so as to allow a person to pass therebetween.

The Court concludes that questions of fact exist as to whether the Ostfriesland photographs anticipate each and every limitation of Claim 17.  The Court notes several ways in which Claim 17 does not apparently read on the Ostfriesland reference.  First, Claim 17 provides for a left pole to be connected to the left side adjacent the left corner and a right pole to be

8

connected to the right side adjacent to the right corner, whereas the poles shown in the prior art reference are located at the corners of the hatch.  Additionally, Claim 17 requires the poles to be spaced at least twenty-four inches apart so that a person can pass between them, and the distance between the poles in the prior art is not clear.  Finally, the spacing of the poles as described by Claim 17 is "to allow a person to pass therebetween"; on the contrary, the presence of a chain between the left and right poles as shown in the photograph suggests that a person was meant to pass not between the poles, but between the right pole and the open hatch cover.

Based on these discrepancies, the Court finds that Bilco has not demonstrated by clear and convincing evidence that the photographs of the Ostfriesland are enabling and thus anticipate the '659 Patent.

### ii.      Claims 18 and 19

Claims 18 and 19 are dependent on Claim 17 but further provide that each of the poles includes a handle, an elongated vertical section, and a bracket[2] that is attached to the vertical section as well as the base member.  Bilco submits that the rings at the top of each of the three poles in the photographs read on the handles described in Claims 18 and 19.  NESEA argues that there is no evidence that the rings at the top of the poles are handles.  Rather, NESEA concludes, "[t]hey are obviously openings through which chains pass."

The Court finds that Bilco has not shown that every element of Claims 18 and 19 was disclosed in the Ostfriesland reference.  "Handle" means "a part that is designed esp[ecially] to

---

[2] "Bracket" is defined as a simple or composite often carved or sculptured overhanging member that projects from a wall, pier, or other structure and is usu[ally] designed to support a vertical load or to strengthen an angle." Webster's Third New International Dictionary 265 (3d ed. 1993).

be grasped by the hand or that may be grasped by the hand (as for lifting or steering)." Webster's, supra, at 1027. It is not obvious that the rings on top of the Ostfriesland's poles were designed to serve such a purpose. Also, while the '659 Patent does describe the handles shown in the preferred embodiment diagrams as "curved," the diagrams depict straight handles that project from the two poles at approximately a forty-five degree angle. These handles are quite different in appearance from the rings that Bilco submits are "curved handles" in the Ostfriesland photographs. Thus, Bilco has failed to adduce clear and convincing evidence that the Ostfriesland photographs would enable one ordinarily skilled in hatch safety to make and use the poles described by Claims 18 and 19.

### iii. Claims 20, 21, and 22

Claims 20 through 22 reflect compliance with OSHA regulations. These claims require, respectively, that the poles extend to a height of forty-two inches above the horizontal support surface, that they are capable of withstanding force of at least two hundred pounds in any direction when applied within two inches of the top, and that the railing is yellow. Bilco relies on the alleged invalidity of Claim 17 as the basis for its argument for the invalidity of these claims. Since the Court has already determined that Bilco has not met its burden regarding the invalidity of Claim 17, Bilco's argument concerning these claims must also fail. See Shelcore, Inc. v. Durham Indus., Inc., 745 F.2d 621, 624 (Fed. Cir. 1984) (stating that movant bears burden of "submit[ting] evidence establishing the invalidity of each claim it asserted to be invalid").

### iv. Claims 6-9 and 12-15 ("the Original Claims")

Questions of fact also exist regarding whether the prior art reference contains each and every limitation of the original claims. Claim 6 describes the poles as attached to brackets at

10

which point "extension flanges are joined together."[3]  Claims 7, 8, and 13 instruct that the brackets have a lateral and longitudinal leg that have bent, curved ends where they join.  The limitations comprising Claims 9, 12, and 14 include the vertical section of the poles attaching to the brackets at the point of the junction between the bracket legs, where the extension flanges also join together.

As previously established, Bilco has not demonstrated that the Ostfriesland's poles fully anticipate the poles in the '659 Patent.  While similarities exist between the limitations of the original claims and the prior art, this Court is cautioned against "treat[ing] the claims as mere catalogs of separate parts, in disregard of the part-to-part relationships set forth in the claims and that give the claims their meaning."  Lindemann Maschinenfabrik v. Am. Hoist & Derrick Co., 730 F.2d 1452, 1459 (Fed. Cir. 1984).  The Court must focus on the entirety of the claimed invention.  See Structural Rubber Prods. Co. v. Park Rubber Co., 749 F.2d 707, 716 (Fed. Cir. 1984) ("the teaching in the prior reference need not be *ipsissimis verbis*, nevertheless, there must be a teaching with respect to the entirety of the claimed invention").  As such, the Court cannot deem the original claims anticipated simply because the photographs also depict vertical poles connected by brackets with curved ends and extension flanges.  The poles referenced in the original claims derive their meaning from Claims 7, 18, and 19, which describe the poles as having handles for grasping and being spaced to permit a person to pass between them.  As stated above, it is not clear that the Ostfriesland's poles share these limitations.  Consequently, Bilco has not demonstrated the invalidity of the original claims.

---

[3]  A "flange" is "a rim or edge . . . projecting at right angles to provide strength or means of attachment to another part."  Webster's, supra, at 864.

### C. Obviousness

As an alternative basis for invalidity, Bilco asserts that any slight differences between the scuttle hatch safety railings of the Ostfriesland and the claims made by the '659 Patent fall within the parameters of § 103 and that the '659 Patent is invalid for obviousness. NESEA replies that Bilco has not engaged in the factual analyses required to merit summary judgment based on obviousness and that, in any event, the Swindell Declaration successfully rebuts any evidence of obviousness Bilco may have.

Pursuant to 35 U.S.C. § 103(a),

> [a] patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Whether a patent is invalid due to obviousness is ultimately a question of law; however, such a determination must be based on factual inquiries set forth in Graham v. John Deere Co., 383 U.S. 1 (1966). The requisite considerations include: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) any objective evidence of nonobviousness. Id. at 16. Based on these facts, the district court must decide whether the claimed invention would have been obvious to one of ordinary skill in the relevant art at the time the invention was made. Custom Accessories, Inc., 807 F.2d at 958.

#### i. The Level of Ordinary Skill in the Art

Factors courts consider in determining the level of ordinary skill in the art include the educational level of the inventor and those who work in the industry, as well as the sophistication

12

of the technology involved.  Ryko Mfg. Co. v. Nu-Star, Inc., 950 F.2d 714, 718 (Fed. Cir. 1991).  Here, the Court makes the inquiry from the perspective of a person ordinarily skilled in the art of access hatch safety.  The Swindell Declaration does not include the inventor's level of education; however, those who typically work with access hatches–in manholes, grain elevators, ships, and the like--do not require a high level of education.  Additionally, based on the descriptions and diagrams provided, the technology involved in the '659 Patent is understandable to a person without sophisticated training.

        **ii.**        **Scope and Content of the Prior Art**

Analogous prior art includes all arts reasonably pertinent to the particular problem confronting the actual inventor at the time.  Pentec, Inc. v. Graphic Controls Corp., 776 F.2d 309, 313 (Fed. Cir. 1985).  In this instance, analogous prior art presumably includes all access hatches, including those used in ships, manholes, fire escapes, buildings, and grain elevators.  The prior art presently in the record includes photographs depicting the hatch safety mechanism of the Ostfriesland, previously described, and OSHA regulations on "[g]uarding floor and wall openings and holes." 29 C.F.R. § 1910.23.  In pertinent part, these regulations require every hatch be guarded by either a hinged cover equipped with standard railings or a combination of fixed and removable railings with toeboards.  Id. § 1910.23(a)(3).  "Standard railings" must have two rails and posts that have a vertical height of at least forty-two inches from the horizontal surface.  Id. § 1910.23(e)(1).  Furthermore, the posts and railings must be capable of withstanding a load of at least 200 pounds applied in any direction at any point on the top rail.  Id. § 1910.23(e)(3)(iv).

### iii. The Differences Between the Claimed Invention and the Prior Art

Bilco argues that the combination of the Ostfriesland photographs and the relevant OSHA regulations together render obvious all elements of the claims contained in the '659 Patent. The Court disagrees. As detailed above, it is not evident that the rings at the top of the Ostfriesland's poles are handles. Nor do the OSHA regulations cited by Bilco necessitate the use of handles in hatch safety railings. Additionally, nothing in the prior art teaches towards having two poles with handles through which a person emerging from the hatch passes. On the contrary, the Ostfriesland photographs suggest a person was meant to pass between a pole and the scuttle hatch cover, and the OSHA regulations do not teach toward the design in the '659 Patent either.

### iv. Objective Evidence of Nonobviousness

A court must also examine any objective evidence of nonobviousness. Such evidence may include commercial success, longfelt but unresolved need, failure of others, and copying. Graham, 383 U.S. at 17-18. In an effort to rebut Bilco's case for obviousness, NESEA submits the Swindell Declaration, which attests to the commercial success of the safety railing systems made in accordance with the '659 Patent. (See Swindell Decl. ¶ 5.) Moreover, Swindell avers that several companies, including Bilco, have copied NESEA's safety railing systems, thereby also deriving commercial success. (Id. ¶ 6.) This evidence shows a sufficient nexus between the '659 Patent and the commercial success to merit consideration, and Bilco makes no attempt to contradict these facts supporting nonobviousness.

### v. Legal Conclusion on Obviousness

Based on the facts elucidated by the Graham factors, the Court finds that Bilco has not proven that the '659 Patent would have been obvious to one of ordinary skill in the art of access

14

hatch safety at the time the invention was made.  See <u>Janssen Pharmaceutica N.V. v. Mylan Pharms., Inc.</u>, 456 F. Supp. 2d 644, 655 (D.N.J.2006) ("It is not enough for a party seeking to defeat a patent on obviousness grounds to merely identify each element of the invention in the prior art." (citing <u>In re Kahn</u>, 441 F.3d 977, 986 (Fed. Cir.2006))).  The Court's consideration of the <u>Graham</u> factors points away from a conclusion that the prior art at the time of the invention would have suggested that the '659 Patent as a whole was obvious to one ordinarily skilled in the art.

      D.      **Interlocutory Appeal**

Had this Court either declined to reconsider its application of Federal Circuit law regarding 35 U.S.C. § 102 prior art or again found against Bilco on whether the Ostfriesland photographs are printed publications or if the Ostfriesland safety railings were in public use within the meaning of § 102, Bilco asked the Court to certify an order for interlocutory appeal to resolve those two questions of law.  The Court has opted to reexamine its application of § 102 and agrees with Bilco that the June 25, 2007 Opinion and Order misapplied binding precedent to the facts in this case.  As a result, the Court now finds that the Ostfriesland photographs are printed publications under § 102.  Based on this finding, it is not necessary for the Court to reconsider its prior disposition of Bilco's secondary argument on the question of public use.

In spite of the Court's change of position on the question of prior art, however, Bilco has still failed to persuade by clear and convincing evidence that the '659 Patent is invalid on grounds of anticipation or obviousness.  Hence, the ultimate outcome of Bilco's summary judgment motion remains the same.  Since the Court now agrees with Bilco's assessment of § 102, Bilco's application for an order permitting interlocutory appeal will be denied as moot.

**IV.    CONCLUSION**

Based on the foregoing reasoning, the Court will deny Bilco's motion for reconsideration. The Court did err previously in refusing to consider the photographs of the Ostfriesland as relevant prior art; however, even considering this prior art, Bilco has not carried its burden in proving invalidity of the '659 Patent. An accompanying Order shall issue today.


Dated: 2/1/08                                                         s/ Robert B. Kugler
                                                                                 ROBERT B. KUGLER
                                                                                 United States District Judge